UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                          :

STEVE STAEHR, Derivatively on Behalf of
Morgan Stanley,                                           :
                           Plaintiff,        :
   -against-                                              :
                                            :

JOHN J. MACK, ZOE CRUZ, EILEEN K.                       :
MURRAY, GARY G. LYNCH, THOMAS R.                        :
NIDES, THOMAS V. DAULA, COLM                            :
KELLEHER, LAURA D. TYSON, C. ROBERT                     :
KIDDER, ROY J. BOSTOCK, ERSKINE B.                      :
BOWLES, SIR HOWARD J. DAVIES,                           :     07 Civ. 10368 (GEL)
DONALD T. NICHOLAISEN, CHARLES H.                       :
NOSKI, HUTHAM S. OLAYAN, CHARLES E.                     :
PHILLIPS, JR., O. GRIFFITH SEXTON,                      :
KLAUS ZUMWINKEL, and DAVID H.                           :
SIDWELL,                                                 :
                       Defendants,        :
   -and-                                                  :
                                            :

MORGAN STANLEY, a Delaware corporation,                 :
                                            :
              Nominal Defendant.        :
                                              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' JOINT MOTION TO DISMISS

SIMPSON THACHER & BARTLETT LLP       DAVIS POLK & WARDWELL
425 Lexington Avenue                      450 Lexington Avenue
New York, New York 10017            New York, New York 10017
Telephone: (212) 455-2000           Telephone: (212) 450-4000
Facsimile: (212) 455-2502            Facsimile: (212) 450-3800

*Attorneys for Independent Director Defendants*    *Attorneys for Nominal Defendant Morgan*
*Laura D. Tyson, C. Robert Kidder, Roy J.*        *Stanley and Management Defendants John*
*Bostock, Erskine B. Bowles, Sir Howard J.*     *J. Mack, Zoe Cruz, Eileen K. Murray, Gary*
*Davies, Donald T. Nicolaisen, Charles H.*      *G. Lynch, Thomas R. Nides, Thomas V.*
*Noski, Hutham S. Olayan, Charles E.*          *Daula, Colm Kelleher and David H. Sidwell*
*Phillips, Jr., O. Griffith Sexton and Klaus*
*Zumwinkel*

## TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ............................................................................................... i

PRELIMINARY STATEMENT ........................................................................................ 1

SUMMARY OF CLAIMS AND DEMAND-FUTILITY ALLEGATIONS.................................. 3

    A. The Alleged Failure to Disclose the Company's Exposure to
       the Subprime Mortgage Market ..................................................................... 4

    B. The Allegedly Improper Approval of the Share Buy-Back Plan ................................. 6

    C. The Allegedly Improper Insider Sales ........................................................ 6

ARGUMENT – PLAINTIFF'S ALLEGATIONS DO NOT EXCUSE HIS FAILURE
TO MAKE DEMAND ON THE MORGAN STANLEY BOARD......................................... 7

  I. THE PURPORTED DISCLOSURE CLAIMS ................................................... 8

    A. No Substantial Likelihood of Director Liability for Securities
       Fraud ..................................................................................... 10

       1. Morgan Stanley Cannot Defraud Itself .................................................. 11

       2. Plaintiff's "Fraud by Hindsight" Claim Is Not Actionable ................................... 13

       3. Plaintiff Has Failed to Plead Loss Causation .......................................... 16

    B. No Substantial Likelihood of Director Liability for Breach of
       Fiduciary Duty ......................................................................... 17

  II. THE APPROVAL OF THE SHARE BUY-BACK ......................................... 19

    A. A Majority of the Board Was Disinterested and Independent ............................... 20

    B. The Share Buy-Back Plan Was a Valid Business Judgment.......................... 20

    C. There Is No Reasonable Question of Waste............................................... 22

  III. THE PURPORTED INSIDER SALES........................................................ 23

CONCLUSION ............................................................................................ 25

TABLE OF AUTHORITIES

PAGE

**Cases**

Acito v. IMCERA Group, Inc., 47 F.3d 47 (2d Cir. 1995) ..................................................... 12, 13

Aronson v. Lewis, 473 A.2d 805 (Del. 1984) ....................................................................... passim

ATSI Commc'ns, Inc. v. The Schaar Fund, Ltd., 493 F.3d 87 (2d Cir. 2007) ............................. 17

Beam v. Stewart, 833 A.2d 961 (Del. Ch. 2003), aff'd, 845 A.2d 1040 (Del. 2004) .................... 8

Beam v. Stewart, 845 A.2d 1040 (Del. 2004). .............................................................................. 21

Brehm v. Eisner, 746 A.2d 244 (Del. 2000) ...................................................................... passim

Criden v. Steinberg, C.A. No. 17082, 2000 WL 354390 (Del. Ch. Mar. 23, 2000) .................... 22

Denny v. Barber, 576 F.2d 465 (2d Cir. 1978) ............................................................................ 14

Dura Pharm., Inc. v. Broudo, 544 U.S. 336 (2005)........................................................... 10, 16, 17

Falkenberg v. Baldwin, No. 76-Civ-2409, 1977 WL 1025 (S.D.N.Y. June 13, 1977)........... 11, 12

Ferre v. McGrath, No. 06 Civ. 1684 (CM), 2007 WL 1180650 (S.D.N.Y. Feb. 6, 2007)............ 24

Fink v. Weill, No. 02 Civ. 10250 (LTS) (RLE), 2005 WL 2298224 (S.D.N.Y. Sept. 19, 2005) ... 9

Garber v. Legg Mason, 537 F. Supp. 2d 597 (S.D.N.Y. 2008)................................................. 13, 14

Guttman v. Huang, 823 A.2d 492 (Del. Ch. 2003) ................................................................ passim

In re Baxter Int'l, Inc. Shareholders Litig., 654 A.2d 1268 (Del. Ch. 1995) ................................ 21

In re Duane Reade Inc. Sec. Litig., No. 02 Civ. 6478 NRB, 2003 WL 22801416 (S.D.N.Y. Nov. 25, 2003), aff'd, 107 Fed. Appx. 250 (2d Cir. 2004) ....................................................... 15

In re First BanCorp Derivative Litig., 465 F. Supp. 2d 112 (D.P.R. 2006) ...................... 18, 19, 23

In re Forest Labs., Inc. Derivative Litig., 450 F. Supp. 2d 379 (S.D.N.Y. 2006)........................ 18

In re Glenayre Techs., Inc. Sec. Litig., No. 96 Civ. 8252 (HB), 1998 WL 915907 (S.D.N.Y. Dec. 30, 1998), aff'd, 201 F.3d 431 (2d Cir. 1999) ................................................................. 13

In re IAC/InterActiveCorp Sec. Litig., 478 F. Supp. 2d 574 (S.D.N.Y. 2007) ................ 2, 7, 9, 18

In re JP Morgan Chase Sec. Litig., No. 02 Civ. 1282 (SHS), 2007 WL 950132 (S.D.N.Y. Mar. 29, 2007) ....................................................................................................... 14

In re Morgan Stanley Derivative Litig., -- F. Supp. 2d -- , No. 05 Civ. 6516 (LTS) (RLE), 2008 WL 820718 (S.D.N.Y. Mar. 27 2008) ................................................................. 9, 20

In re Omnicom Group, Inc. Sec. Litig., -- F. Supp. 2d -- , No. 02 Civ. 4483 (WHP), 2008 WL 243788 (S.D.N.Y. Jan. 29, 2008) ..................................................................... 16, 17

In re Pfizer Inc. Derivative Sec. Litig., 503 F. Supp. 2d 680 (S.D.N.Y. 2007) ..................... 10, 21

In re Scholastic Corp. Sec. Litig., 252 F.3d 63 (2d Cir. 2001) ....................................... 12

In re Silicon Graphics Sec. Litig., 183 F.3d 970 (9th Cir. 1999) ................................... 13

In re Sofamor Danek Group, Inc., 123 F.3d 394 (6th Cir. 1997) .................................... 15

In re Walt Disney Co. Derivative Litig., 825 A.2d 275 (Del. Ch. 2003). ................... 8, 19, 20, 22

In re Walt Disney Co. Derivative Litig., 907 A.2d 693 (Del. Ch. 2005), aff'd, 906 A.2d 27 (Del. 2006) ....................................................................................................... 3

Kaplan v. Bennett, 465 F. Supp. 555 (S.D.N.Y. 1979) ................................................ 12

Kimmel v. Labenski, No. 85 Civ. 0804 (CSH), 1988 WL 19229 (S.D.N.Y. Feb. 10, 1988) ....... 17

Lentell v. Merrill Lynch & Co., 396 F.3d 161 (2d Cir. 2005) ................................... 11, 16

Loveman v. Lauder, 484 F. Supp. 2d 259 (S.D.N.Y. 2007) ................................. 1, 8, 17, 18

Maldonado v. Flynn, 597 F.2d 789 (2d Cir. 1979) ................................................ 11, 12

Novak v. Kasaks, 216 F.3d 300 (2d Cir. 2000) ......................................................... 14

Rales v. Blasband, 634 A.2d 927 (Del. 1993) ................................................... passim

Rattner v. Bidzos, No. Civ. A. 19700, 2003 WL 22284323 (Del. Ch. Sept. 30, 2003) ............ 24

Rothman v. Gregor, 220 F.3d 81 (2d Cir. 2000) ....................................................... 15

San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos., 75 F.3d 801 (2d Cir. 1996) .................................................................................... 15, 16

Seminaris v. Landa, 662 A.2d 1350 (Del. Ch. 1995) ...................................................... 9

Shields v. Citytrust Bancorp, Inc., 25 F.2d 1124 (2d Cir. 1994) .................................. 16

Steiner v. Meyerson, Civ. A. No. 13139, 1995 WL 441999 (Del. Ch. July 19, 1995) ................ 22

Stevelman v. Alias Research, Inc., 174 F.3d 79 (2d Cir. 1999) .................................... 14

Stone v. Ritter, 911 A. 2d 362 (Del. 2006) .......................................................... 18, 19

Tellabs, Inc. v. Makor Issues & Rights, Ltd., 127 S. Ct. 2499 (2007) ........................... 13

The 60223 Trust v. Goldman, Sachs & Co., -- F. Supp. 2d -- , No. 03 Civ. 3548 (TPG), 2007 WL 4326730 (S.D.N.Y. Dec. 4, 2007) ............................................................... 17

**Statutes and Rules**

Del. Code Ann. tit. 8, § 102(b)(7) .................................................................. 21

Fed. R. Civ. P. 9(b) .................................................................................. 1

Fed. R. Civ. P. 12(b)(6) .............................................................................. 1

Fed. R. Civ. P. 23.1 ............................................................................... 1, 7

Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(b) ...................... 1, 10, 13

Defendants respectfully submit this memorandum of law in support of their joint motion to dismiss the Verified Shareholders Derivative Complaint (the "Complaint") pursuant to Rule 23.1 of the Federal Rules of Civil Procedure, as well as Rules 9(b) and 12(b)(6) and section 78u-4(b) of the Private Securities Litigation Reform Act of 1995.

PRELIMINARY STATEMENT

The Complaint must be dismissed because Plaintiff seeks in this shareholder derivative action to assert claims on behalf of Morgan Stanley, a Delaware corporation, but has not satisfied the requirements of Rule 23.1 and Delaware law that he first make a demand upon its Board of Directors or allege with particularity the reasons that excuse him from doing so. Fed. R. Civ. P. 23.1; Loveman v. Lauder, 484 F. Supp. 2d 259, 264-65 (S.D.N.Y. 2007). It is not enough that Plaintiff has named the directors themselves as defendants. Rather, Plaintiff must allege particular facts showing that the Board, in considering a demand, could not exercise independent judgment in Morgan Stanley's interests. Plaintiff has failed to make this showing. The Complaint does not allege with particularity any personal interest, lack of independence or substantial likelihood of liability on the part of Morgan Stanley's directors that would render them incapable of considering a demand. This derivative action accordingly must be dismissed.

The common basis for Plaintiff's various claims against Morgan Stanley's directors and senior management is the Company's announcement on November 7, 2007, that the deterioration in the subprime mortgage market had reduced its revenues by $3.7 billion for the prior two months, and that its remaining net subprime exposure was $6 billion. (Compl. ¶ 59.) Plaintiff alleges that the Company's earnings releases from June 2006 to September 2007 did not adequately disclose this risk of loss – and that Morgan Stanley paid too much for stock that it repurchased during this period because the market price allegedly did not reflect the Company's

subprime market exposure.  On this basis, the Complaint asserts that Morgan Stanley's directors and certain officers committed securities fraud and breached their fiduciary duties, including by authorizing the Company to repurchase its stock.  The Complaint also asserts that certain directors and executives knew about the Company's undisclosed subprime market exposure and, acting on that knowledge, sold Morgan Stanley stock.  For none of his claims, however, has Plaintiff made the showing required by Delaware law to maintain a derivative action.

First, Plaintiff has failed to show that demand is excused for his claims that certain defendants committed securities fraud and breached their fiduciary duties by purportedly not timely disclosing Morgan Stanley's subprime related exposure.  Under Delaware law, to show that demand is excused, a shareholder must allege with particularity facts suggesting that a majority of the board cannot act independently or itself faces a "substantial likelihood" of liability.  In re IAC/InterActiveCorp Sec. Litig., 478 F. Supp. 2d 574, 598-99 (S.D.N.Y. 2007) (quoting Rales v. Blasband, 634 A.2d 927 (Del. 1993)).  The Complaint fails this test.  It raises no question as to independence, nor does it show a "substantial likelihood" of director liability. Plaintiff's theory that Morgan Stanley defrauded itself into repurchasing its stock makes no sense:  Plaintiff himself alleges that the Company's directors and senior officers knew of the alleged subprime exposure, so the Company cannot have been misled by its own disclosures. Beyond this, the core premise of Plaintiff's fraud claim – that Morgan Stanley should have disclosed its subprime exposure earlier – is precisely the kind of "fraud by hindsight" allegation that courts have repeatedly rejected.  Further, Plaintiff has failed to plead that Morgan Stanley's supposedly improper disclosures caused the Company any loss.  Plaintiff's claim that the Board breached its fiduciary duties fares no better, because Plaintiff fails to allege facts showing that the directors consciously failed to oversee the Company's disclosures.  (See infra pp. 17-19.)

2

Second, Plaintiff has not shown that demand is excused for his claims that the Board breached its fiduciary duties and committed waste by authorizing Morgan Stanley to repurchase its shares. That decision by the Board is presumptively protected by the business judgment rule, and the Complaint raises no reasonable doubt that it was a valid business judgment. Aronson v. Lewis, 473 A.2d 805, 812 (Del. 1984). The Complaint does not show that the directors were personally interested in the repurchase plan or otherwise lacked independence. Nor does it demonstrate the "gross negligence" required to show a breach of due care, Brehm v. Eisner, 746 A.2d 244, 259 (Del. 2000), or the "intentional dereliction of duty" or "conscious disregard" required to show bad faith, In re Walt Disney Co. Derivative Litig., 907 A.2d 693, 755 (Del. Ch. 2005), aff'd, 906 A.2d 27 (Del. 2006). It also fails to allege a valid claim of waste. (See infra pp. 22-23.)

Finally, Plaintiff has not shown that demand is excused for his claim that certain defendants sold Morgan Stanley stock based on inside information. Only three directors allegedly sold stock. Plaintiff raises no doubt that the remaining nine Board members – a majority – could impartially evaluate the insider-sales claims. Nor, for that matter, does he plead facts showing that the directors who allegedly sold stock face a "substantial likelihood" of liability that would affect their impartial consideration of a demand. (See infra p. 23-24.)

SUMMARY OF CLAIMS AND DEMAND-FUTILITY ALLEGATIONS

Plaintiff's purported claims on behalf of Morgan Stanley fall into three categories: (1) claims that certain defendants committed securities fraud and breached their fiduciary duties in connection with Morgan Stanley's alleged failure to disclose its exposure to the subprime mortgage market; (2) claims that the directors breached their fiduciary duties and committed waste by authorizing Morgan Stanley to repurchase stock at prices inflated by its alleged failure

3

to disclose its subprime exposure; and (3) claims that certain directors and executive officers

breached their fiduciary duties by selling Morgan Stanley stock on the basis of undisclosed

information about the Company's subprime exposure.[1]

A.   The Alleged Failure to Disclose the Company's
Exposure to the Subprime Mortgage Market

Plaintiff's core assertion is that Morgan Stanley's quarterly earnings releases from June

2006 to September 2007 did not adequately disclose the Company's risk of loss in the event of a

deterioration in the subprime mortgage market.  The Complaint quotes at length from these

earnings releases, which reported the Company's results for each fiscal quarter and, in December

2006, its fiscal year.  (Compl. ¶¶ 53-58.)  The Complaint alleges that a March 21, 2007 earnings

release announced "record" first quarter income for 2007 and quoted defendant John J. Mack, the

Chairman and CEO, as stating that "[t]his strong performance was in large part the result of

effective, disciplined risk-taking by our team in Institutional Securities."  (Compl. ¶ 56.)

The Complaint alleges that on November 7, 2007, Morgan Stanley "revealed the true

extent of the Company's exposure to the subprime mortgage market crisis."  (Compl. ¶ 59.)  The

November 7 release stated that Morgan Stanley was providing "additional information about the

Firm's U.S. subprime related exposures, which have declined in value as a result of continued

market deterioration since August 2007."  (Id.)  It stated that Morgan Stanley's net subprime-

related balance sheet exposure had been $10.4 billion as of August 31, 2007, and was $6 billion

as of October 31, 2007.  (Id.)  The release also stated that as a result of declines in the value of

---

[1]  The directors are Laura D. Tyson, C. Robert Kidder, Roy J. Bostock, Erskine B. Bowles, Sir Howard J. Davies, John J. Mack (Chairman and Chief Executive Officer), Donald T. Nicolaisen, Charles H. Noski, Hutham S. Olayan, Charles E. Phillips, Jr., O. Griffith Sexton and Klaus Zumwinkel.  The non-director defendants are Zoe Cruz, Eileen K. Murray, Gary G. Lynch, Thomas R. Nides, Thomas V. Daula, Colm Kelleher and David H. Sidwell.

the Company's exposures, "Morgan Stanley's revenues for the two months ended October 31, 2007, were reduced by $3.7 billion . . . ."  (Id.)

Plaintiff asserts that Morgan Stanley's prior releases "failed to disclose and misrepresented" the purportedly "material adverse facts" that "Morgan Stanley was more exposed to the subprime mortgage crisis than it had disclosed," that "Morgan Stanley's risk-taking in regard to subprime mortgage related assets was anything but effective and disciplined" and that "Morgan Stanley's reported business prospects for its fiscal year 2007 were inaccurate." (Compl. ¶ 60.)  He asserts that as a result, Morgan Stanley paid inflated prices for stock that it repurchased in 2007.  (Compl. ¶ 61.)  The directors and David H. Sidwell, the then-Chief Financial Officer, allegedly "knew or deliberately disregarded that the Company's public statements concerning its business prospects were misleading."  (Compl. ¶ 81.)

Based on these allegations, the Complaint asserts claims for securities fraud against the directors and Sidwell under section 10(b) of the Securities Exchange Act of 1934 and SEC Rule 10b-5, as well as "controlling person" claims against Mack, Sidwell and the Audit Committee under section 20(a) of the Act.  (Compl. ¶¶ 80-88.)  The Complaint also asserts that defendants breached their fiduciary duties to the Company because they allegedly knew that the Company had misrepresented its "business prospects and financial results."  (Compl. ¶¶ 89-94.)

Plaintiff asserts that demand is excused because the directors allegedly "knew of and/or directly benefited from the [alleged] wrongdoing," (Compl. ¶ 74) and that they are "not disinterested" because they allegedly "participated in, approved and/or permitted the wrongs alleged" (Compl. ¶ 75).  The members of the Audit Committee (Nicolaisen, Noski, Phillips and Davies) allegedly "participated in the preparation" of statements "that contained improper material information." (Compl. ¶ 72.)  The directors allegedly "knew the adverse non-public

5

information regarding Morgan Stanley's true business prospects" and had "an insider's view of the subprime mortgage crisis" as a result of Morgan Stanley's alleged December 2006 acquisition of Saxon, "an originator and servicer of subprime loans." (Compl. ¶ 71.) Directors Mack, Tyson and Kidder allegedly were "interested" in the Company's improper disclosures because they later sold stock. (Id.) The Complaint also asserts, without reference to any particular claim or conduct, that the members of the Compensation Committee (Bowles, Kidder and Nicolaisen) "are not disinterested and/or independent" and that Mack "lacks independence" because they "exert influence over [his] compensation." (Compl. ¶ 73.)

B.  The Allegedly Improper Approval of the Share Buy-Back Plan

Plaintiff claims that the Board breached its fiduciary duties and committed waste by authorizing the Company to repurchase its shares "while Morgan Stanley's stock was artificially inflated due to . . . improper statements." (Compl. ¶ 61.) Plaintiff asserts that, in approving the repurchase plan, the Board "failed to properly discuss and consider the subprime mortgage lending crisis and its effect on the Company's billions in warehoused subprime loans." (Id.) The Company allegedly repurchased stock valued at $3.2 billion at an average price of $76 per share, as compared to an alleged current share price of less than $54 per share. (Id.)

Plaintiff asserts that demand is excused as to this claim because "the Board's decision to authorize the repurchase program was not the product of valid business judgment." (Compl. ¶ 70.) He also alleges that directors Mack, Tyson and Kidder "engaged in self-dealing" by selling shares while directing the Company to buy shares. (Id.)

C.  The Allegedly Improper Insider Sales

Plaintiff alleges that certain directors and officers knew that the Company's disclosures were inaccurate and took advantage of that knowledge to sell stock. (Compl. ¶ 65.) Plaintiff

asserts that demand is excused as to the insider-sales claims because the three directors who

allegedly sold shares face a "sufficiently substantial threat of liability for breach of their

fiduciary duties for insider selling."  (Compl. ¶ 71.)  The Complaint states no reason why the

remaining nine members of the Board could not impartially consider these claims.[2]

<u>ARGUMENT</u>

PLAINTIFF'S ALLEGATIONS DO NOT EXCUSE HIS FAILURE
<u>TO MAKE DEMAND ON THE MORGAN STANLEY BOARD</u>

This derivative action should be dismissed because Plaintiff has failed to meet the

standards under Rule 23.1 for showing that a majority of the Board is incapable of impartially

evaluating the claims that he seeks to assert on the Company's behalf.

It is well settled that in a derivative action on behalf of a Delaware corporation, such as

Morgan Stanley, federal courts assess demand-futility allegations under Rule 23.1 in accordance

with Delaware law.  <u>In re IAC/InterActiveCorp Sec. Litig.</u>, 478 F. Supp. 2d 574, 598 (S.D.N.Y.

2007).  Delaware law provides two standards for demand futility.  Where a shareholder seeks to

challenge a decision of the Board, courts apply the two-part test of <u>Aronson v. Lewis</u>, 473 A.2d

805 (Del. 1984).  <u>See</u> <u>Rales v. Blasband</u>, 634 A.2d 927, 933 (Del. 1993) ("The essential

predicate for the <u>Aronson</u> test is the fact that a decision of the board of directors is being

challenged.").  Under <u>Aronson</u>, demand is excused only if, "under the particularized facts

alleged," a reasonable doubt is created that "(1) the directors are disinterested and independent"

or "(2) the challenged transaction was otherwise the product of a valid exercise of business

judgment."  473 A.2d at 814.  The second prong of <u>Aronson</u> requires a shareholder to allege

specific facts showing that the directors' decision is not protected by the business judgment rule,

---

[2]  The directors who allegedly sold stock are Mack, Tyson and Kidder, and the officers are Cruz, Daula, Lynch, Murray and Nides.

id. at 815, either because the directors were grossly negligent in failing to consider available information, Brehm v. Eisner, 746 A.2d 244, 259 (Del. 2000), or because they "consciously and intentionally" disregarded their duties, In re Walt Disney Co. Derivative Litig., 825 A.2d 275, 289 (Del. Ch. 2003).

Where, by contrast, "there is no conscious decision by directors to act or refrain from acting," courts apply the one-part test of Rales. 634 A.2d at 933-34. The inquiry under Rales is "whether or not the particularized factual allegations of [the] complaint create a reasonable doubt that, as of the time the complaint is filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand." Id. at 934. Directors are not considered interested simply because they are proposed as defendants. Id. at 936. Rather, the directors' interest in not being sued will excuse demand only if the facts alleged show that a majority of the Board faces "a substantial likelihood" of liability. Id.; see also Loveman v. Lauder, 484 F. Supp. 2d 259, 265-66 (S.D.N.Y. 2007) (discussing Aronson and Rales); Guttman v. Huang, 823 A.2d 492, 500-01 (Del. Ch. 2003) (same).

Under both standards, "Delaware [law] requires that facts demonstrating that a demand would be futile be alleged with particularity." Loveman, 484 F. Supp. 2d at 265. "[C]onclusory allegations of fact or law which are not supported by allegations of specific fact may not be taken as true." Id. (quotation omitted). Grounds for excusing demand must be shown for each purported claim. See Beam v. Stewart, 833 A.2d 961, 977 n.48 (Del. Ch. 2003) ("Demand futility analysis is conducted on a claim-by-claim basis"), aff'd, 845 A.2d 1040 (Del. 2004).

## I.    THE PURPORTED DISCLOSURE CLAIMS

The Complaint does not allege facts with particularity showing that the Board could not impartially consider Plaintiff's claims that defendants engaged in securities fraud and breached

their fiduciary duties in connection with Morgan Stanley's alleged failure to disclose its exposure to the subprime mortgage market.

The Complaint does not allege with particularity that the Board made a conscious decision not to disclose Morgan Stanley's subprime exposure. The <u>Rales</u> test therefore governs the demand-futility analysis for the disclosure claims. <u>See</u> <u>Rales</u>, 634 A.2d at 933 (announcing standards applicable "[w]here there is no conscious decision by directors to act or refrain from acting"). Plaintiff's conclusory assertions that the directors "participated in, approved and/or permitted the wrongs alleged" (Compl. ¶ 75) and "authorized and/or permitted the false statements" (Compl. ¶ 77) are inadequate to allege conscious board action. <u>See</u>, <u>e.g.</u>, <u>In re Morgan Stanley Derivative Litig.</u>, -- F. Supp. 2d -- , No. 05 Civ. 6516 (LTS) (RLE), 2008 WL 820718, at *4 (S.D.N.Y. March 27, 2008) ("[C]onclusory references to the board's 'concealment'" and "failure to 'disclose' . . . are insufficiently particularized to allege a specific board decision to omit information.") (quotation omitted).[3]

The Complaint fails the <u>Rales</u> standard because it does not "create a reasonable doubt that . . . the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand." 634 A.2d at 934. Plaintiff does not assert that a

---

[3] <u>See also</u> <u>In re IAC/InterActiveCorp Sec. Litig.</u>, 478 F. Supp. 2d at 598 (applying <u>Rales</u> to claims that directors allowed issuance of misleading financial projections); <u>Seminaris v. Landa</u>, 662 A.2d 1350, 1354 (Del. Ch. 1995) ("Plaintiff alleges that the board failed to prevent [the chairman/CEO] from misrepresenting the corporation's financial condition. The complaint also alleges that certain board members signed misleading statements on behalf of the corporation, and that all the defendants conspired with [the chairman/CEO] to misrepresent the value of the corporation's stock. However, plaintiff does not challenge any specific board action that approved or ratified these alleged wrongdoings. Therefore, plaintiff must satisfy the one step test announced in <u>Rales</u> to demonstrate that he was excused from making a demand."); <u>Fink v. Weill</u>, No. 02 Civ. 10250 (LTS) (RLE), 2005 WL 2298224, at *3 & n.6 (S.D.N.Y. Sept. 19, 2005) (applying <u>Rales</u> and approving <u>Seminaris</u> for "applying <u>Rales</u> where directors [were] accused of failing to prevent misrepresentations").

majority of the Board could not act independently in considering a demand.  Id. at 936.[4]  Nor has

he alleged facts showing that the directors have a personal interest that would influence their

decision.  Id.  The mere naming of the directors as defendants is not enough, without more, to

make them interested.  Id. (citing Aronson, 473 A.2d at 815).  Rather, to show that the directors

are personally interested as potential defendants, a shareholder must show through particularized

factual allegations that the directors face a "substantial likelihood" of liability.  Id.; Guttman, 823

A.2d at 500 & n.15.  As shown below, Plaintiff's allegations fail to show that the directors face a

"substantial likelihood" of liability for either securities fraud or breach of fiduciary duty.

A. No Substantial Likelihood of Director Liability
for Securities Fraud

Plaintiff has not pleaded specific facts showing that the Board faces a "substantial

likelihood" of liability for securities fraud.  With respect to this claim, the need to allege facts

with particularity is imposed not only by Delaware law but also by the heightened pleading

requirements of the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-

4(b)(1), (2).  To state a claim for securities fraud under section 10(b), a plaintiff must allege (1) a

material misrepresentation or omission; (2) scienter; (3) a connection with the purchase or sale of

a security; (4) reliance or transaction causation; (5) economic loss; and (6) loss causation.  Dura

Pharm., Inc. v. Broudo, 544 U.S. 336, 341-42 (2005).

Plaintiff's allegations fail to state a claim for securities fraud, much less show with

particularity that the Board faces a "substantial likelihood" of liability.  First, the basic theory of

---

[4] The assertion that Bowles, Kidder and Nicolaisen have "influence" over Mack (Compl. ¶ 73) is
meaningless, because Plaintiff raises no reasonable doubt as to their own impartiality.  See In re Pfizer Inc.
Derivative Sec. Litig., 503 F. Supp. 2d 680, 686 (S.D.N.Y. 2007) (to lack independence, director must be beholden
to an "interested" person).  The bald assertion that they are "not disinterested and/or independent" (Compl. ¶ 73) is
inadequate, and Plaintiff has not shown that they face a "substantial likelihood" of liability, see infra pp. 10-19.

the purported claim – that Morgan Stanley defrauded itself into repurchasing its stock – makes no sense given that Plaintiff has alleged that the Company's officers and directors knew about Morgan Stanley's undisclosed subprime exposure. Second, Plaintiff's disclosure claim rests on precisely the kind of "fraud by hindsight" allegations that the courts have invariably rejected. And third, Plaintiff has failed to plead that Morgan Stanley's supposedly improper disclosures were the cause of any loss to the Company, an essential element of any securities-fraud claim.

1. *Morgan Stanley Cannot Defraud Itself.* Plaintiff's securities-fraud claim rests on the basic premise that the Board and the Company's senior executives knew that Morgan Stanley had exposures to the subprime market that were not disclosed. The Complaint does not allege that the Company's directors and senior executives were deceived about the Company's alleged exposure when they authorized the repurchase plan or made decisions to purchase Company stock. Rather, Plaintiff alleges that Morgan Stanley's directors and senior officers knew about the Company's subprime exposures and knew that its earnings releases failed to disclose them. That alleged knowledge is imputed to Morgan Stanley, and it precludes any claim that the Company was defrauded. See Maldonado v. Flynn, 597 F.2d 789, 793 (2d Cir. 1979). The alleged nondisclosure cannot have caused Morgan Stanley to repurchase its stock, and therefore Plaintiff cannot plead the essential element of transaction causation. Lentell v. Merrill Lynch & Co., 396 F.3d 161, 172 (2d Cir. 2005) (the plaintiff must allege that "but for the claimed misrepresentations or omissions, the [company] would not have entered into the detrimental securities transaction") (quotation omitted).

The defect in Plaintiff's theory of fraud was explained by this Court in Falkenberg v. Baldwin, No. 76-Civ-2409, 1977 WL 1025 (S.D.N.Y. June 13, 1977), a shareholder derivative action against the officers and directors of Uniroyal corporation. There, as here, the plaintiff

11

alleged that the defendants had caused the corporation not to disclose certain liabilities, and that the corporation was injured when it repurchased its own shares at artificially inflated prices.  Id. at *2.  The Court correctly concluded that the complaint made "no allegation of fraud under the federal securities laws," because the Company's officers and directors allegedly "had knowledge of the facts concerning the corporation's potential liability . . . and the knowledge of all these individuals is imputed to the corporation."  Id.; see also Kaplan v. Bennett, 465 F. Supp. 555, 564-66 (S.D.N.Y. 1979) (following Falkenberg).  As the Court explained, "[i]n the absence of an adequate allegation of conflict of interest, or of deception by one group of officers or directors, or of a controlling influence over the directors and officers, the claim of fraud in this context is meaningless."  Falkenberg, 1997 WL 1025, at *2.

Here, the Complaint likewise contains no particularly pleaded allegation that any director had a "conflict of interest" or "dece[ived]" the Board or the Company about Morgan Stanley's alleged subprime exposure.  The Complaint alleges that three directors – Mack, Kidder and Tyson – were "interested" in the alleged nondisclosure because they sold stock during the relevant period (Compl. ¶¶ 65, 71), but the Complaint alleges no such interest as to the remaining majority of the Board.  Their alleged knowledge therefore defeats any notion that the Company was deceived.  See Maldonado, 597 F.2d at 793, 795 (knowledge of disinterested board members precludes deception of corporation); cf. In re Scholastic Corp. Sec. Litig., 252 F.3d 63, 75 (2d Cir. 2001) (where only some directors sell stock, lack of sales by others "undermine[s] the . . . theor[y] that negative information was withheld to obtain a higher sell price").  Further, even as to the three selling directors, the mere allegation that they later sold stock fails to demonstrate that they were interested in Morgan Stanley's purported nondisclosure of its subprime exposure.  Only "unusual insider trading activity . . . may permit an inference of bad faith and scienter,"

Acito v. IMCERA Group, Inc., 47 F.3d 47, 54 (2d Cir. 1995), and Plaintiff has not even asserted, much less pleaded with particularity, that these sales were unusual. He has not alleged facts showing that they were "dramatically out of line with prior trading practices [and] at times calculated to maximize the personal benefit from undisclosed insider information." In re Silicon Graphics Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999) (quotation omitted); see also In re Glenayre Techs., Inc. Sec. Litig., No. 96 Civ. 8252 (HB), 1998 WL 915907, at *4-5 (S.D.N.Y. Dec. 30, 1998), aff'd, 201 F.3d 431 (2d Cir. 1991) (quoting same language).

    2.  *Plaintiff's "Fraud by Hindsight" Claim Is Not Actionable.* Plaintiff alleges that Morgan Stanley's November 7, 2007 announcement regarding its subprime market exposure "revealed" that three "material adverse facts" had been misrepresented in the Company's prior earnings releases (Compl. ¶ 60), but the Complaint fails to plead specific facts showing that any statement in the earnings releases was false or misleading. Plaintiff's theory of fraud is simply that Morgan Stanley's prior earnings releases did not disclose the information announced on November 7, 2007. His claim is nothing more than an impermissible assertion of "fraud by hindsight." See, e.g., Garber v. Legg Mason, 537 F. Supp. 2d 597, 615 (S.D.N.Y. 2008). The Complaint contains no particularly pleaded facts giving rise to the "strong inference" of scienter on the part of the Board that is necessary to state a valid claim. Tellabs, Inc. v. Makor Issues & Rights, Ltd., 127 S. Ct. 2499, 2507 (2007).

    Plaintiff has not carried his burden to "specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading," 15 U.S.C. § 78u-4(b)(1). He asserts that "Morgan Stanley was more exposed to the subprime mortgage crisis than it had disclosed" (id. ¶ 60(a)), but the mere fact that Morgan Stanley announced a subprime-related loss and continuing exposure on November 7, 2007, does not mean that prior disclosures

13

were false.  "Mere allegations that statements in one report should have been made in earlier reports do not make out a claim of securities fraud."  Garber, 537 F. Supp. 2d at 615 (quoting Stevelman v. Alias Research, Inc., 174 F.3d 79, 84 (2d Cir. 1999)).  Plaintiff does not allege that Morgan Stanley's earnings releases overstated the Company's earnings or failed to disclose any loss.  Nor does he identify any statement that he alleges misled investors about the Company's subprime exposure.  His contention that Morgan Stanley should have anticipated its possible losses and disclosed that information sooner does not state a claim of fraud.  Novak v. Kasaks, 216 F.3d 300, 309 (2d Cir. 2000) ("[A]llegations that defendants should have anticipated future events and made certain disclosures earlier than they actually did do not suffice to make out a claim of securities fraud.");  Denny v. Barber, 576 F.2d 465, 470 (2d Cir. 1978) (to same effect).

Plaintiff asserts that Morgan Stanley did not disclose that its "risk-taking in regard to subprime mortgage related assets was anything but effective and disciplined" (Compl. ¶ 60(b)), apparently referring to Mr. Mack's statement in Morgan Stanley's March 21, 2007 earnings release that "[t]his strong performance [the record results for the fiscal first quarter] was in large part the result of effective, disciplined risk-taking by our team in Institutional Securities, which helped deliver record results across our sales and trading business" (Compl. ¶ 56).  The Complaint fails, however, to allege facts demonstrating that the risk-taking that contributed to Morgan Stanley's record first quarter revenues was not at that time effective and disciplined.  "[G]eneralizations regarding integrity, fiscal discipline and risk management constitute precisely the type" of statements that the Second Circuit and other circuit courts "have consistently held to be inactionable."  In re JP Morgan Chase Sec. Litig., No. 02 Civ. 1282 (SHS), 2007 WL 950132, at *12 (S.D.N.Y. Mar. 29, 2007) (quotation omitted).  Nor can the alleged statement have led the

markets to believe that Morgan Stanley had no material exposure to the subprime markets,

particularly in view of Morgan Stanley's express risk disclosures in its public filings.[5]

       Plaintiff also asserts that "Morgan Stanley's reported business prospects for its fiscal year

2007 were inaccurate" (Compl. ¶ 60(c)), but the earnings releases quoted in the Complaint report

only past quarterly results (and annual results for 2006), not future "prospects."  The Complaint

fails even to say what Morgan Stanley's reported "business prospects" were for 2007, much less

show how they were "inaccurate."  A statement that accurately describes past performance "does

not become misleading even if less favorable results might be predictable by the company in the

future."  In re Duane Reade Inc. Sec. Litig., No. 02 Civ. 6478 (NRB), 2003 WL 22801416, at *6

(S.D.N.Y. Nov. 25, 2003), aff'd, 107 Fed. Appx. 250 (2d Cir. 2004) (quoting In re Sofamor

Danek Group, Inc., 123 F.3d 394, 401 n.3 (6th Cir. 1997)).  Cf. San Leandro Emergency Med.

Group Profit Sharing Plan v. Philip Morris Cos., 75 F.3d 801, 811 (2d Cir. 1996) (statements that

---

[5] Morgan Stanley's Annual Report for its 2006 fiscal year expressly warned investors about market risk, including risks to investments in mortgage-backed securities:

> "Our results of operations may be materially affected by market fluctuations and by economic and other factors.  The amount, duration and range of our market risk exposures have been increasing over the past several years, and may continue to do so.  Our results of operations may be materially affected by market fluctuations due to economic factors."  Decl. of Robert F. Wise, Jr. ("Wise Decl.") Ex. A, Morgan Stanley, Annual Report (Form 10-K), at 16 (Nov. 30, 2006).

> "We also securitize and trade in a wide range of commercial and residential real estate and real estate-related whole loans, mortgages and other real estate and commercial assets and products, including residential and commercial mortgage-backed securities.  These businesses could be adversely affected by a downturn in the real estate sector."  Id. at 17.

> "Our hedging strategies and other risk management techniques may not be fully effective in mitigating our risk exposure in all market environments or against all types of risk . . . Some of our methods of managing risk are based upon our use of observed historical market behavior. As a result, these methods may not predict future risk exposures, which could be significantly greater than the historical measures indicate."  Id. at 22.

The Court may properly consider these disclosures in deciding Defendants' motion.  See Rothman v. Gregor, 220 F.3d 81, 88 (2d Cir. 2000) (Court may properly consider any "public disclosure documents required by law to be, and that have been, filed with the SEC").

15

company was "optimistic" about earnings and "expected" good performance could not have

misled investors and "cannot constitute actionable statements under the securities laws"); Shields

v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1129 (2d Cir. 1994) (affirming dismissal of claim that

defendants had not disclosed vulnerability of loan portfolio to drops in real estate values and

noting that "[m]isguided optimism is not a cause of action, and does not support an inference of

fraud").

    3. *Plaintiff Has Failed to Plead Loss Causation.*  The Complaint does not allege facts

showing that the alleged nondisclosure caused Morgan Stanley any loss.  To show loss causation,

Plaintiff must plead facts showing that "the misstatement or omission concealed something from

the market that, when disclosed, negatively affected the value of the security."  Lentell v. Merrill

Lynch & Co., 396 F.3d 161, 173 (2d Cir. 2005).  The Complaint lacks any such allegation.  To

the contrary, although Plaintiff asserts that "the truth [was] revealed" by the Company on

November 7, 2007 (Compl. ¶ 59), the Complaint conspicuously fails to allege that Morgan

Stanley's stock price fell upon news of the announcement, as would be expected if the alleged

nondisclosure had in fact inflated the price of Morgan Stanley's stock.  Cf. Dura, 544 U.S. at 347

(noting failure to allege that "[the] share price fell significantly after the truth became known").

    Plaintiff's allegation that Morgan Stanley paid an "artificially inflated" price for its stock

(Compl. ¶ 5) is inadequate to plead loss causation.  Dura, 544 U.S. at 347 (allegation that the

purchase price was "artificially inflated" does not plead loss causation).  Nor is it enough for

Plaintiff to allege that Morgan Stanley's stock price fell during the relevant period (Compl. ¶ 6),

because the Complaint must also "show that [the] loss was caused by the alleged misstatements

as opposed to intervening events."  Lentell, 396 F.3d at 174 (quotation omitted).  Plaintiff simply

ignores this need to "distinguish the alleged fraud from the 'tangle of [other] factors' that affect a

16

stock's price." In re Omnicom Group, Inc. Sec. Litig., -- F. Supp. 2d -- , No. 02 Civ. 4483 (WHP), 2008 WL 243788, at *7 (S.D.N.Y. Jan. 29, 2008) (quoting Dura, 544 U.S. at 343). Indeed, the Complaint does not even attempt to connect the alleged decline in Morgan Stanley's stock price over the relevant period with the supposed misrepresentations. Cf. The 60223 Trust v. Goldman, Sachs & Co., -- F. Supp. 2d -- , No. 03 Civ. 3548 (TPG), 2007 WL 4326730, at *11 (S.D.N.Y. Dec. 4, 2007) ("This gradual loss of value occurred during the time when the alleged false and misleading [statements] were being issued," but "[t]he complaint does not even refer to the phenomenon of the gradual loss of the stock's value, much less attempt to explain it as related to loss causation.").[6]

### B. No Substantial Likelihood of Director Liability for Breach of Fiduciary Duty

The Complaint similarly fails to allege facts showing that the directors face a "substantial likelihood" of liability for breach of fiduciary duty. As noted above, the Complaint's conclusory allegations that the Board and Audit Committee "reviewed" and "approved" Morgan Stanley's earnings releases during the relevant period and "caused" or "allowed" them to be issued are unsupported by any specific factual allegation that any director affirmatively decided not to disclose information about Morgan Stanley's subprime exposure. As courts have repeatedly recognized, such conclusory allegations of "approval" are essentially claims that the directors did not prevent misleading disclosures, and they therefore must meet the stringent standards for pleading that directors breached their duty of oversight or supervision. See, e.g., Loveman v. Lauder, 484 F. Supp. 2d 259, 266, 270 (S.D.N.Y. 2007) (categorizing claims that the board

---

[6] Plaintiff's failure to show "substantial likelihood" of liability under section 10(b) precludes such a showing for his control person claim under section 20(a). Cf. ATSI Commc'ns, Inc. v. The Schaar Fund, Ltd., 493 F.3d 87, 108 (2d Cir. 2007). Also, Plaintiff's conclusory allegations of control (Compl. ¶ 87) lack the specificity required. Kimmel v. Labenski, No. 85 Civ. 0804 (CSH), 1988 WL 19229, at *5 (S.D.N.Y. Feb. 10, 1988).

allowed false or misleading earnings releases to be issued as "Caremark-type allegations of inaction and failure adequately to oversee the corporation's activities"); In re Forest Labs., Inc. Derivative Litig., 450 F. Supp. 2d 379, 395-96 (S.D.N.Y. 2006) (claim that directors breached fiduciary duty by causing company to issue misleading reports is failure-of-oversight claim); In re First BanCorp Derivative Litig., 465 F. Supp. 2d 112, 119-21 (D.P.R. 2006) (same); Guttman v. Huang, 823 A.2d 492, 505-07 (Del. Ch. 2003) (same).

Such claims of failed oversight – so called Caremark claims – require a plaintiff to demonstrate subjective bad faith by the directors in not discharging their duty of oversight. See Stone v. Ritter, 911 A. 2d 362, 369-70 (Del. 2006). For this reason, a failure-of-oversight claim "is possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment." In re IAC/InterActiveCorp Sec. Litig., 478 F. Supp. 2d at 605 (quotation omitted). "[B]ad faith cannot be averred generally in the demand excusal context, but must be supported by particularized factual pleading." Id. Thus, to avoid dismissal for failure to make a demand, the Complaint must allege with particularity that the directors "failed to act in the face of a known duty to act, thereby demonstrating a conscious disregard for their responsibilities." Stone, 911 A.2d at 370. Plaintiff must allege facts showing that the directors either "utterly failed to implement any reporting or information system or controls" that might have prevented the alleged harm, or that they "consciously failed to monitor or oversee its operations thus disabling themselves from being informed of risks or problems requiring their attention." Id.

The Complaint fails to meet this standard. It contains no particularized allegations regarding the alleged nondisclosures, much less any showing that the directors consciously disregarded their oversight responsibilities. Plaintiff's assertions that the directors did not "exercise reasonable and prudent supervision over the management, policies, practices, and

18

controls of the financial affairs of the Company" (Compl. ¶ 36), "fail[ed] to prevent" defendants

from misrepresenting the Company's financial prospects (Compl. ¶ 38) and "violated and

breached their fiduciary duties of care, loyalty, reasonable inquiry, oversight, good faith and

supervision" (Compl. ¶ 91) are unsupported by any particularly alleged facts. They are

inadequate to show that the directors "knew that they were not discharging their fiduciary

obligations." Stone, 911 A.2d at 370. See, e.g., Guttman, 823 A.2d at 498 (dismissing

derivative complaint "devoid of any pleading regarding the full board's involvement in the

preparation and approval of the company's financial statements"); In re First BanCorp Derivative

Litig., 465 F. Supp. 2d at 119-21 (dismissing derivative claim that directors failed to prevent the

dissemination of materially misleading statements in quarterly reports and press releases). The

Complaint falls far short of demonstrating that the directors face a "substantial likelihood" of

liability for breaching their fiduciary duties in connection with Morgan Stanley's disclosures.

II.  THE APPROVAL OF THE SHARE BUY-BACK

Plaintiff has failed to show that demand is excused for his purported claims that the

Board breached its fiduciary duties by authorizing Morgan Stanley to repurchase its shares. The

Complaint does not allege with particularity facts that would excuse demand under the two-

pronged test of Aronson v. Lewis for derivative claims challenging a business judgment of the

Board. 473 A.2d 805, 814 (Del. 1984); supra pp. 7-8. The Complaint raises no reasonable doubt

under Aronson that the directors were "disinterested and independent," Brehm v. Eisner, 746

A.2d 244, 256-57 (Del. 2000), or that the directors either were "grossly negligent" in failing to

consider available information, id. at 259, or acted in bad faith by "consciously and

intentionally" disregarding their duties, In re Walt Disney Co. Derivative Litig., 825 A.2d 275,

289 (Del. Ch. 2003).

A.  <u>A Majority of the Board Was Disinterested and Independent</u>

The Complaint fails to allege any facts creating a reasonable doubt that a majority of the

Board was disinterested or that it acted with independence in authorizing the share repurchase

plan.  The Complaint identifies no personal financial benefit that any director would receive

from the authorization that was not equally shared by the Company's other stockholders.  <u>See</u>

<u>Aronson</u>, 473 A.2d at 812.  Plaintiff suggests something untoward in the alleged fact that three

directors sold stock after authorizing the repurchase plan (Compl. ¶ 70), but such sales do not

show that those directors expected to receive a benefit from the Company's repurchases that was

not shared by other stockholders.  Nor does Plaintiff cast any doubt on the disinterestedness of

the other nine members of the Board.  <u>Cf.</u> <u>In re Morgan Stanley Derivative Litig.</u>, 2008 WL

820718, at *9 ("With regard to disinterestedness, there are no allegations whatsoever as to what

specific benefit was obtained by any defendant as a result of Morgan Stanley's stock repurchase,

and as such there is no improper motive shown that would cast doubt on whether Defendants

would be disinterested in considering whether to adopt Plaintiffs' Section 10(b) claim.").  Nor is

it alleged that any director lacked independence.  <u>See</u> <u>supra</u> pp. 9-10 & n.4.

B.  <u>The Share Buy-Back Plan Was a Valid Business Judgment</u>

Plaintiff asserts that the Board's authorization of the share repurchase program was "not

the product of a valid business judgment" (Compl. ¶ 70), but the Complaint lacks any

particularized allegations that would support that assertion.  <u>See</u> <u>Aronson,</u> 473 A.2d at 814.  It is

well settled that a Board's business decision is considered a valid exercise of business judgment

so long as the directors informed themselves with due care of all material information reasonably

available to them and did not act in bad faith.  <u>See</u> <u>Aronson</u>, 473 A.2d at 812-13; <u>see also</u> <u>Brehm</u>,

746 A.2d at 259, 264 & n.66; <u>In re Walt Disney Co. Derivative Litig.</u>, 825 A.2d at 286.  Further,

20

"[d]irectors are entitled to a *presumption* that they were faithful to their fiduciary duties," and "the burden is upon the plaintiff in a derivative action to overcome that presumption." Beam v. Stewart, 845 A.2d 1040, 1048-49 (Del. 2004). Plaintiff has not met this burden.

First, even if Plaintiff had alleged with particularity facts raising a reasonable doubt as to their exercise of due care (and he has not), the directors cannot face a "substantial likelihood of liability" for breaching their duty of care, because Morgan Stanley's Certificate of Incorporation exculpates the directors from any liability to the Company for any breach of their duty of care.[7] See, e.g., In re Pfizer Inc. Derivative Sec. Litig., 503 F. Supp. 2d 680, 685 (S.D.N.Y. 2007). Nor, for that matter, does the Complaint create any reasonable doubt that the Board discharged its duty of care in authorizing the repurchase plan. Where a shareholder asserts that directors breached their duty of care, "[p]re-suit demand will be excused in a derivative suit only if . . . the particularized facts in the complaint create a reasonable doubt that the informational component of the directors' decisionmaking process, *measured by concepts of gross negligence*, included consideration of all material information reasonably available." Brehm, 746 A.2d at 259. Plaintiff has not alleged any such facts. He alleges only that, "[a]mong other things, the Board failed to properly discuss or consider the negative effects that the subprime mortgage crisis would have on the Company's business prospects." (Compl. ¶ 70.) This allegation lacks any specificity that might suggest "gross negligence." His allegation that the directors had "an insider's view of the subprime mortgage crisis" as a result of the Company's December 2006 acquisition of Saxon (Compl. ¶¶ 49, 71) fails to allege what that "insider's view" entailed, much

---

[7] See Wise Decl. Ex. B, Morgan Stanley, Amended and Restated Certificate of Incorporation, at 5 (Feb. 28, 2007); Del. Code Ann. tit. 8, § 102(b)(7) (authorizing such exculpatory charter provisions); In re Baxter Int'l, Inc. Shareholders Litig., 654 A.2d 1268, 1270 (Del. Ch. 1995).

less that it was available at the time the Board authorized the repurchase plan announced on

December 12, 2006 (Compl. ¶ 61).

Nor has Plaintiff raised any reasonable doubt that the Board authorized the plan in good

faith.  The Complaint contains no factual allegations showing that a majority of directors

"consciously and intentionally" disregarded their duty to act in the Company's interests.  See In

re Walt Disney Co. Derivative Litig., 825 A.2d at 289.  Plaintiff asserts that directors Mack,

Tyson and Kidder "engaged in self-dealing in that they sold their personally held shares while

directing the Company to buy shares" (Compl. ¶ 70), but even this assertion falls short of

alleging bad faith.  To show subjective bad faith, the Complaint would need to allege facts

showing that these directors approved the repurchase plan without believing that it was in

Morgan Stanley's best interests.  It does not do so.  And in any event, the allegation that three

directors sold stock says nothing about the good faith of the other nine members of the Board.

     C.   There Is No Reasonable Question of Waste

In a third attempt to fashion a claim from the Board's approval of the repurchase plan,

Plaintiff asserts that it amounted to waste (Compl. ¶ 101-02), but here again the Complaint has

not shown that demand is excused.  To maintain a derivative claim of waste, Plaintiff must

"allege with particularity facts tending to show that no reasonable business person would have

made the decision that the [Morgan Stanley] Board made under these circumstances."  Brehm,

746 A.2d at 266.  See also Steiner v. Meyerson, Civ. A. No. 13139, 1995 WL 441999, at *1

(Del. Ch. July 19, 1995) ("This is obviously an extreme test, very rarely satisfied by a

shareholder plaintiff.").  Plaintiff has not even attempted to demonstrate that the repurchase plan

"either served no purpose" or was "completely bereft of consideration," as necessary to

demonstrate waste.  Criden v. Steinberg, No. 17082, 2000 WL 354390, at *3 (Del. Ch. Mar. 23,

2000).  In addition, Plaintiff has not stated a claim of waste because the decision to authorize the

repurchase plan did not itself entail any "transfer" of corporate assets.  See, e.g., Brehm, 746

A.2d at 263 (noting that waste claims entail the "exchange" or "transfer" of corporate assets).

The Board simply authorized Morgan Stanley to purchase up to $6 billion of its stock "at prices

the Company deems appropriate, subject to its surplus capital position, market conditions, and

regulatory considerations."  (Compl. ¶ 55.)  That authorization, in itself, did not entail any

transfer of any Morgan Stanley asset, and thus cannot constitute waste by the Board.[8]

III. THE PURPORTED INSIDER SALES

The Complaint provides no basis to question that the Board could impartially consider

Plaintiff's claim that three directors and certain executive officers engaged in allegedly improper

insider sales.  (Compl. ¶¶ 65, 71, 95-99.)  There are no allegations that a majority of the directors

lack independence from any of the proposed defendants or have personal financial interests that

might impair their impartial evaluation of these claims.  See In re First BanCorp Derivative

Litig., 465 F. Supp. 2d at 121 (dismissing insider-selling claims for failure to make demand

because only three members of a ten-member board were alleged to have sold, so majority of

board was capable of impartially considering demand); Guttman, 823 A.2d at 501 (when a claim

is asserted against a minority of the board, the Rales inquiry focuses only on whether the

remaining directors could impartially consider a demand).

Moreover, even as to the three directors who allegedly sold shares, the Complaint fails to

demonstrate through particularized factual allegations that they face a "substantial likelihood" of

liability.  A director is not "interested" whenever a derivative plaintiff cursorily alleges that he

---

[8] Plaintiff's assertions that the Board committed waste by "paying bonuses" to certain executives and by "incurring potentially hundreds of millions of dollars of legal liability and/or legal costs to defend defendants' unlawful actions" (Compl. ¶ 101), are unexplained, much less supported by specific factual allegations.

made sales of company stock in the market at a time when he possessed material, non-public information.  Guttman, 823 A.2d at 502.  Here, Plaintiff has not even identified with particularity the "material, non-public information" that the sellers allegedly possessed.  See, e.g., Rattner v. Bidzos, No. Civ. A. 19700, 2003 WL 22284323, at *10-11 (Del. Ch. Sept. 30, 2003) (dismissing derivative claims where complaint failed to show that insiders possessed material non-public information); see also Ferre v. McGrath, No. 06 Civ. 1684 (CM), 2007 WL 1180650, at *6 (S.D.N.Y. Feb. 6, 2007) (dismissing derivative action asserting insider-sales claims without "particularized allegation that would tend to demonstrate that [the selling defendants] were in possession of inside information").  Nor has Plaintiff alleged "particularized facts that could lead to the inference that the timing of the trades reflected . . . impermissible insider trading," Rattner, 2003 WL 22284323, at *10, or an "orchestrated scheme to defraud the market and the Company's shareholders," as opposed to "good faith adherence to Company policy or consisten[cy] with prior individual practices," id. at *12, as would be necessary to show a "substantial likelihood" of liability for insider sales.[9]

---

[9] Nor does the Complaint show a "substantial likelihood" of liability on Plaintiff's conclusory claim that the defendants were all "unjustly enriched" by their purportedly "wrongful acts and omissions." (Compl. ¶¶ 104-06.)

<u>CONCLUSION</u>

For the foregoing reasons, defendants respectfully request that the Complaint be

dismissed for Plaintiff's failure to make demand on the Board of Morgan Stanley.


Dated:   New York, NY
         May 5, 2008

         SIMPSON THATCHER & BARTLETT          DAVIS POLK & WARDWELL
         LLP


By:   /s/ Bruce D. Angiolillo              By:   /s/ Robert F. Wise, Jr.
      _____               _____

      Bruce D. Angiolillo                        Robert F. Wise, Jr.
      bangiolillo@stblaw.com                     robert.wise@dpw.com
      Jonathan K. Youngwood                      Charles S. Duggan
      jyoungwood@stblaw.com                      charles.duggan@dpw.com
      SIMPSON THATCHER & BARTLETT               DAVIS POLK & WARDWELL
      425 Lexington Avenue                       450 Lexington Avenue
      New York, New York 10017                   New York, New York 10017
      Telephone: (212) 455-2000                  Telephone: (212) 450-4000
      Facsimile: (212) 455-2502                  Facsimile: (210) 450-3800

      *Attorneys for Independent Director*       *Attorneys for Nominal Defendant*
        *Defendants Laura D. Tyson, C. Robert*     *Morgan Stanley and Management*
        *Kidder, Roy J. Bostock, Erskine B.*       *Defendants John J. Mack, Zoe Cruz,*
        *Bowles, Sir Howard J. Davies,*            *Eileen K. Murray, Gary G. Lynch,*
        *Donald T. Nicolaisen, Charles H.*         *Thomas R. Nides, Thomas V. Daula,*
        *Noski, Hutham S. Olayan, Charles E.*      *Colm Kelleher and David H. Sidwell*
        *Phillips, Jr., O. Griffith Sexton and*
        *Klaus Zumwinkel*